

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2004

# Teamsters Local 843 v. Anheuser Busch Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4128

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Teamsters Local 843 v. Anheuser Busch Inc" (2004). *2004 Decisions.* Paper 762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-4128
_____

BOTTLE BEER DRIVERS, WAREHOUSEMEN & HELPERS
TEAMSTERS LOCAL 843; PETER TIERNEY,

Appellants

v.

ANHEUSER BUSCH INC.; PENSION PLAN FOR CERTAIN NEWARK
HOURLY EMPLOYEES OF ANHEUSER-BUSCH, INC.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-cv-00551)
District Judge: Katharine S. Hayden

_____

Argued:  November 20, 2003

BEFORE:  RENDELL, BARRY and MAGILL[*], Circuit Judges

(Opinion Filed: April 30, 2004)
_____

Louie D. Nikolaidis (Argued)
Lewis, Greenwald, Clifton & Nikolaidis
340 George Street
New Brunswick, NJ 08901
*Counsel for Appellants*

_____

[*]Honorable Frank Magill, Senior United States Circuit Judge for the Eighth Circuit
Court of Appeals, sitting by designation.

John K. Bennett (Argued)
Connell Foley
85 Livingston Avenue
Roseland, NJ 07068
*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

MAGILL, <u>Senior Circuit Judge</u>.

Bottle Beer Drivers, Warehousemen & Helpers Teamsters Local 843 and Peter Tierney (collectively "Local 843") appeal the order of the District Court granting summary judgment in favor of Anheuser-Busch, Inc. and Pension Plan for Certain Newark Hourly Employees of Anheuser-Busch, Inc. (collectively "Anheuser-Busch") on all appellants' claims. Local 843 sued Anheuser-Busch, claiming that the company inured assets of its members' defined benefits plan to its own benefit, that it breached its fiduciary duty by misusing those funds, and that the union is entitled to restitution under federal common law.

The District Court had jurisdiction to hear this ERISA dispute under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. We have appellate jurisdiction over the District Court's final order under 28 U.S.C. § 1291. The District Court ruled that the funds Anheuser-Busch received from Local 843 and placed in its own accounts were not assets of the defined benefits plan. Accordingly, it ruled that Anheuser-Busch did not inure plan assets to its own benefit, did not breach its fiduciary duty in handling plan assets, and does not

-2-

owe Local 843 restitution under the federal common law. Local 843 appeals. We review district court orders granting summary judgment *de novo* and employ the same legal standard employed by the district court. Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000). We affirm.

Anheuser-Busch established a defined benefits plan for its employees in 1973 under the terms of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. The plan remains in effect and has since covered Anheuser-Busch employees at its brewery in Newark, New Jersey, who are members of Local 843, including those employees who take leaves of absence to work temporarily as agents of the union. Plan benefits are funded from a common pool of assets ("the pension fund") which is managed by a fund trustee. Contributions to the fund are paid directly to the trustee. From the plan's inception until 1994, the company contributed an amount specified in the operative collective bargaining agreement ("CBA") for each employee, as required by the plan document. For those Anheuser-Busch employees on leave to serve Local 843, the union contributed an identical amount, receiving invoices and making payments, like Anheuser-Busch, directly to the trustee. Anheuser-Busch made no contributions for these employees during their terms working for the union.

This arrangement ended in 1995. By the time Anheuser-Busch and Local 843 were negotiating a new CBA in 1994, pension fund investments had done so well that the fund had considerably more money than required by statute. Accordingly, Anheuser-

Busch sought to remove from the new CBA the contract term requiring it to make periodic contributions. The union agreed to leave the amount and timing of contributions in the discretion of Anheuser-Busch in return for an increase in the amount each employee would be entitled to receive as a pension benefit under the defined benefits plan. For several months after the new CBA took effect, the company and the union continued to make contributions as they had previously. In early 1995, however, with the pension fund continuing to thrive, Anheuser-Busch decided that contributions were no longer necessary and stopped making them.

The union also stopped making payments to the trustee at this time, but began making payments to Anheuser-Busch at the company's request. The company determined that if the union made no payments whatsoever, the company could be liable for giving a "thing of value" to union employees, a violation of § 302(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(a). The company based its thinking on this court's opinion in Trailways Lines Inc. v. Trailways, Inc. Joint Council of Amalgamated Transit Union, AFL-CIO, 785 F.2d 101 (3d Cir. 1986), which held that employees who take leaves of absence to perform union service are not employees for purposes of the statutory exemption for payments to trust funds established for the benefit of employees, and thus CBAs which allow this practice violate the LMRA.[1]

---

[1]In Caterpillar Inc. v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., 107 F.3d 1052 (3d Cir. 1997) (*en banc*), this court overruled Trailway Lines. Trailway Lines remained good law at the time Anheuser-Busch relied on it.

To resolve this potential problem, Anheuser-Busch proposed charging the union an amount equal to what it has to declare in its accounting as an expense for providing these benefits.[2] A Plan actuary memorialized this position for Anheuser-Busch in a letter dated May of 1995. Anheuser-Busch informed the union of its position. Union officers at the time testified at their depositions that they understood themselves to be reimbursing the company for its costs rather than making plan contributions. Anheuser-Busch began invoicing the union for these costs and the union sent payments directly to the company. Anheuser-Busch did not deposit these funds into the pension fund, but instead placed them into its corporate accounts.

The union sued the company, stating a claim for restitution under federal common law. At the time it filed the suit, the union did not know that the company had retained these funds. After initial investigations, the union amended its complaint to allege

---

[2]Anheuser-Busch is required as a publicly traded company to use Generally Accepted Accounting Principles in reporting its financial performance. Under Financial Accounting Standards No. 87, it must declare a contemporary expense for providing defined benefit pensions even if it makes no contemporary contribution to the plan. RESEARCH AND DEV. ARRANGEMENTS, Statement of Financial Accounting Standards No. 87, ¶¶ 11-62 (Fin. Accounting Standards Bd. 1985), *available at* http://www.fasb.org/pdf/fas87.pdf. This expense, though in a sense fictional, is an estimate of the cost attributable to providing benefits for a specific period. See id. at ¶ 12 (stating that "the total amount of benefit that the employer has promised and the cost to the employer of the services rendered are not precisely determinable but can only be estimated using the benefit formula and estimates of the relevant future events, many of which the employer cannot control"). Anheuser-Busch declared this "expense" in its financial disclosures during the relevant period, and asked Local 843 to reimburse it for that expense. When we refer to the company's "cost" or "expense" in this opinion, we refer to this accrual accounting estimate of the company's actual expense.

violations of the anti-inurement and fiduciary duty provisions of ERISA. The parties filed cross-motions for summary judgment. The District Court determined that the funds paid by the union to the company were not "plan assets," and consequently ruled that the ERISA provisions did not apply to the company's actions. It also held that the undisputed evidence shows that the union paid the funds pursuant to an agreement with the company and not by mistake, as is required to prove a claim for restitution. The union appeals this order.

The resolution of this case hinges on the way we characterize the payments Local 843 made to Anheuser-Busch. Local 843 claims the payments were contributions to the Anheuser-Busch employees' pension trust fund, and were therefore plan assets. Anheuser-Busch, on the other hand, claims that the payments were made for the purpose of reimbursing it for its expenses in providing pension benefits to employees who were temporarily working for the union. We agree with Anheuser-Busch.

No statute, regulation, or case law defines "plan assets" in a way that answers the question whether Local 843's payments to Anheuser-Busch should have been deposited into its employees' pension trust fund. ERISA leaves the term "plan asset" undefined. The Secretary of Labor has issued some regulations regarding plan assets, but these regulations do not address the present situation. According to 29 C.F.R. § 2510.3-102(a), plan assets "include amounts . . . that a participant or beneficiary pays to an employer . . . for contribution to the plan." This definition does not bear on the present case because

the instant pension plan does not allow contributions by participants. The definition of plan assets contained in 29 C.F.R. § 2510.3-101(a)(1) is unhelpful as well, for it concerns only "what constitute assets of a plan with respect to a plan's investment in another entity." The present dispute concerns funds that have not yet been invested. Cases interpreting the phrase "plan asset" help only insofar as they make clear that funds may, in some cases, be plan assets before they are actually deposited into the benefits plans. United States v. Grizzle, 933 F.2d 943 (11th Cir. 1991). In Grizzle, the Eleventh Circuit held that plan assets "include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan." Id. at 947. Thus, the fact that Anheuser-Busch never deposited the union funds into its employees' pension trust fund does not necessarily defeat the union's claim that those funds were plan assets. Nor, however, does any legal authority resolve the question in the union's favor.

Absent a legal definition, we are left with the terms of the benefits plan itself, which indicate that the union's payments were not plan assets. This method of resolving the issue accords with the general principles of ERISA. For "ERISA neither mandates the creation of pension plans nor in general dictates the benefits to be afforded once a plan is created." Smith v. Contini, 205 F.3d 597, 602 (3d Cir. 2000). ERISA did not create in Anheuser-Busch a duty to pay funds into the pension plan, "only the plan can create an entitlement to benefits." Id. The benefits plan leaves the particulars of the obligation to

contribute to the collective bargaining process. The CBA in effect from February 25, 1991, to February 28, 1994, obligated the company to pay between $28.41 and $29.91 per compensable day per participating employee.

But the CBA that went into effect on March 1, 1994 left the funding decision to the discretion of the company because the pension trust fund was hugely over-funded due to strong investment performance. Since the plan provided for defined benefits, an increase in the fund corpus would not benefit plan participants. Both parties admit that Anheuser-Busch decided under the new terms not to make plan contributions. Because the CBA also requires the company to treat the union in the same fashion, the company did not require plan contributions from the union.

The plan, the CBA, and the facts surrounding the union payments show that these funds were not plan assets. The union was under no obligation to make contributions to the pension fund. Nevertheless, the company decided that it needed to charge the union for the cost of providing pensions to those of its employees who transferred temporarily into union employment. Under the terms of § 302(a) of the LMRA, Anheuser-Busch cannot provide any "thing of value" to a union employee. 29 U.S.C. § 186(a). The company thought, based on court decisions, that it might be liable under the LMRA for providing benefits to its employees attributable to the employees' time working for the union. The company decided it should charge the union for the "cost" of those portions of the benefits. The company decided to approximate that cost by charging Local 843 the

amount under accounting standards that it had to declare as an expense for the same benefits. This proposal appeared in a letter from the Plan actuary to the company, and it is uncontested that Anheuser-Busch informed Local 843 of its position.

If the union payments were not plan assets, Local 843 cannot sustain its ERISA claims. The ERISA anti-inurement provision applies only to plan assets. Section 1103(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. § 1103(c)(1). Local 843 cannot maintain its § 1103(c)(1) claim against the company because its payments were not plan assets.

The same fact dispenses with Local 843's breach of fiduciary duty claim under § 1104(a)(1)(A)(i). An employer acts as a fiduciary when it administers a benefits plan, but not when it makes business decisions that have secondary and tertiary effects on the payment of benefits. Noorily v. Thomas & Betts Corp., 188 F.3d 153, 158 (3d Cir. 1999). In Noorily, this court held that an employer did not act as a fiduciary even when it denied severance benefits under a plan that left that decision in its discretion. The court wrote that an "employer acts as a fiduciary when administering a plan but not when designing or making business decisions allowed for by a plan, even though in all three situations its determinations may impact on its employees." Id. This plan did not require Anheuser-Busch to deposit the Local 843 payments into the pension trust fund. And the uncontested evidence shows that Anheuser-Busch asked the union to cover the pension

costs of its union agents in order to avoid liability for breaching the LMRA-imposed duty against providing something of value to union employees. Regardless whether the LMRA, as then interpreted, did require such an arrangement, the decision to charge the union clearly was a business decision, and the company was not acting as a fiduciary when it made that decision. We also note that Anheuser-Busch's decision had zero impact on the payment of benefits.

Finally, we must consider Local 843's claim for restitution under federal common law. We conclude that this cause of action is foreclosed by the uncontested deposition testimony by former union officials that they understood the payments were not contributions. Local 843 claims that it is entitled to reimbursement by Anheuser-Busch of its payments under a theory of restitution recognized by this court in Plucinski v. I.A.M. Nat'l Pension Fund, 875 F.2d 1052 (3d Cir. 1989). The Plucinski court held "that there is an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law." Id. at 1057. We disagree that Plucinski applies to these facts. Both the company and the union initially agreed that the union should reimburse the company for the cost of benefits attributable to the period each employee served as a union official. Thus, these payments were not mistaken payments of plan assets. If there was any mistake, it was the mutual conviction that the union should cover attributed costs. Federal restitution as recognized in Plucinski does not extend to funds only tangentially related to ERISA benefits plans.

Because the District Court correctly granted Anheuser-Busch's motion for summary judgment against Local 843, we affirm.